We have four argued cases this morning. The first of these is number 18-2067, ProMOS Technologies v. Samsung Electronics. Mr. Kaplan. Good morning, Your Honors. May it please the Court. This appeal presents the dispositive issue of claim construction and whether the Board's construction of the term fanning the wafer properly gave weight to the amendments made during prosecution of the patent in order to overcome the cited prior argument. Would the Board's construction be correct if we didn't have the prosecution history? The prosecution history is what I rest on, so, Your Honor, there's no, we haven't analyzed the question of whether it would be correct in the absence of the prosecution history because we are relying solely on the prosecution history. So, there's no argument whether, we didn't argue whether it would be supported or not supported by the specification alone. So, but what's the answer to the question? Would the construction be correct if we didn't have the prosecution history? The prosecution history is what limits it, in our view. So, it would be correct without the prosecution? Yes, Your Honor. There's nothing in the specification that says fanning the wafer means cooling over the front of the wafer. The words in the front do not appear, Your Honor. That's correct. It says fanning the wafer to cool it. It does not say the front. Did you, when you were trying to distinguish the prior art, tell the examiner that fanning the wafer meant cooling over the front? The, the arguments that were submitted as part of the opposite. Let me be clear. What I am asking is, did you explicitly use the words over the front or some variation of it in, using the word front in responding to the examiner's rejection? No. Okay. So, we have to take an inference from everything else. That's correct, Your Honor. How does an inference ever rise to a level of clear and unambiguous? Your Honor, the examiner was clear and unambiguous when he stated that in rejecting the original claims, the wafer was cooled in an argon atmosphere by blowing gas under the rear surface of the wafer, and indeed that is exactly what Endo teaches. The amendment was made to include the fanning the wafer language. How does that tell us that the examiner allowed it because you cooled over the front when you didn't even tell him you cooled over the front? Because the only teaching of cooling in Endo, Your Honor, is cooling under the rear. And so, if that amendment is to be given meaning, that's the only reasonable inference that can be drawn from it. Well, if you'd said that Endo doesn't teach fanning the wafer, you might have a good argument, but that's not what was said during the prosecution. It was qualified since it doesn't disclose fanning the wafer sufficiently to cool the thing within certain parameters, right? I believe the entire limitation in the statement is cooling it to a degree sufficient to eliminate the stress or reduce the stress between the aluminum-copper layer and the titanium-nitride layer. I'd like to go back to my colleague Judge Hughes, his question. How can we find clear and unmistakable disclaimer by an inference? Isn't that in opposite terms? I don't believe that's correct, Your Honor. Your Honor, this Court has said that there's no sort of magic formula for finding a clear and unmistakable disclaimer. It doesn't require me or it does not require a prosecutor. But it's got to be clear, and it's got to be unmistakable, meaning there is no other or it's difficult to find another type of interpretation to that. But here you're asking us to infer. Your Honor, I would submit that the inference is clear and unmistakable because the examiner said that it is cooled by blowing under the wafer. The only amendment that was made was to include the fanning the wafer, to further refine the cooling step, to include the fanning the wafer limitation to a temperature sufficient to alleviate the stress, and the claim was then allowed. And so the only reasonable inference that can be drawn from that, Your Honor, is that the amendment was deemed sufficient by the examiner to distinguish between the prior art endo and the claims that were ultimately allowed. This isn't a case where there were a series of amendments made to the claims. Well, another inference is that it does not include fanning the front of the wafer. I don't see how that could be an inference when the prior art discloses fanning the rear of the wafer and the amendment was made to overcome the prior art. And so perhaps I'm not understanding your question. Well, the Board found that the prior art might have been overcome for several reasons, not just the front, which is particularly true since you never used the word the front as a reason to distinguish. Yeah, the Board identified three potential ambiguities. I mean, if you were the patentee and somebody was trying to show that they didn't infringe because you had given this up as prosecution history estoppel, I have no doubt you'd be in here saying, we never used the word front. That's not clear and unambiguous. You have to get to an inference to do that. I mean, it just doesn't seem to come close to our standard for prosecution history estoppel. When you didn't tell the examiner the reason you thought it distinguished that you're now telling us, the examiner never said it specifically and the Board posited several other reasons that it could have distinguished the prior art. I don't see how you come close to prevailing here. Your Honor, I can address the specific ambiguities identified by the Board. The first, the slow cooling point, Your Honor, we submit is inextricably linked to how the prior art teaches the cooling, which is blowing on the rear of the wafer. And so that purported ambiguity is not an ambiguity at all. It simply reflects what is taught by the prior art and what is being disclaimed. I'm not sure that I understand why you're conceding that there has to be a clear and unmistakable disclaimer here. The fanning the wafer is not a term that has a meaning that's well known. And the prosecution history can bear on the construction of the term fanning the wafer without having to find a clear and unmistakable disclaimer. It's just a question of claim construction and the prosecution history sheds light on the correct claim construction. There's no plain and ordinary meaning to fanning. That's correct, Your Honor. We don't need a disclaimer. We just need to figure out what fanning the wafer means based on all the available intrinsic evidence, the language itself, the specification, and the prosecution history. You don't have to have a disclaimer to make the prosecution history relevant to interpretation. But you haven't already done it.  Well, I accept and agree with your point. The way the Clay case was briefed is slightly different. Returning again to Judge Hughes and the ambiguities, the second alleged ambiguity was the timing ambiguity, and there's simply no basis in the record or the claims for the timing ambiguity as to when the cooling occurs. It clearly and unambiguously occurs between the first and second, between the deposition of the aluminum copper film and the deposition of the titanium nitride film, and there is no suggestion anywhere in the intrinsic record that that's happening. Is there any discussion in the specification at all of what fanning the wafer means? It's discussed in passing as fanning the wafer in the chamber, but that's the extent of it. Is the prior art system of cooling to the rear of the wafer also fanning the wafer? I would say no, not in this context, because it was distinguished during prosecution. Besides the prosecution? I mean, you made up a term that you then didn't define. It doesn't appear to be a term of art, and I just don't know how specific it is, because it sounds pretty general to me. It sounds like using some kind of inert gas to cool the chip after it went through the super hot chamber. I don't see why using the inert gas to the rear is not very similar to going over the top. I know you say it may have a different speed, it may do all these kinds of things, but you didn't define the term in any way except fanning the wafer. The term fanning is not defined. It is used in the specification, but it is not defined specifically in the specification. And when it's used, in what context is it used? In the discussion of putting inert gas into a chamber to cool the chip? Yes. Which is exactly what ENDO does, just on a different side of the chip. Well, ENDO puts the gas into a different chamber that is located as part of the electrode that the wafer is sitting on, and it blows gas on the rear of the substrate. So it's not blowing gas into the chamber per se, it's blowing gas into a chamber that is located on the rear as shown in figure two. So there is a distinction in our mind, Your Honor, between blowing it into the chamber per se and simply blowing it onto the rear, which is distinguished. Do you want to save the rest of your time? I will save the rest of my time. Mr. Moti. Good morning, Your Honor. May it please the Court. This doesn't have to be a disclaimer, right? It doesn't have to be a clear and unmistakable disclaimer. We could look to the prosecution history to determine the meaning of fanning the wafer, which is not a term that has a plain and ordinary meaning, does it? So, Your Honor, I agree that the prosecution history does shed light as to the meaning of fanning the wafer. With respect to the plain and ordinary meaning, if you look at A1300, the patent owner here actually pointed to a dictionary to define fanning, and they said fanning meant to cause air to blow upon based on that dictionary. So what we submit is that here what PROMAS has to do, it actually, obviously, during the prosecution, it amended the claims to include certain language. It had the ability to describe that amendment and the prior art. It should not now use the prosecution history to propose a claim construction and rewrite its claims based on what we suggest does not meet this Court's exacting standard of clear and unmistakable disclaimer. Wait, why does it have to be a clear and unmistakable disclaimer? Your Honor. Tell me now what fan is. Is fanning the wafer have a plain and ordinary meaning? Your Honor, we submit, if you look at the evidence that's in the record, again, if you look at A1300. A1300? Yes, Your Honor. So this is their patent owner response that they submitted to the Patent Office in response to the institution decision, and you can see in the middle paragraph they say the word fanning in the context of semiconductor manufacturing would be understood by a person of ordinary skill in the art to mean directing a gas or gases at a target in a controlled manner. Then they go on. You don't accept the dictionary definitions. Fanning is to cause air to blow up on heads from a fan. The patent here doesn't involve a fan. The patent certainly only has one statement, as Mr. Kaufman pointed out, that talks about fanning, and what we suggest is this whole distinction about what's in endo and what's in Yamada, the prior reference we relied upon. What we submit is all endo discloses is that you have a chamber that's filled with gas, and it's slow cooling. Yamada or endo talks about slow cooling and gradual cooling. When we talk about fanning, it's a very active step. You're fanning the wafer, and that's very consistent. Not using a fan. Sure, Your Honor. I'll give you that. All I'm suggesting is, for example, if you look at Yamada, and this is at A393, paragraph 35, what Yamada tells us when it talks about cooling the substrate, it says proactively cooling the substrate by blowing a low-temperature gas against it. It's very different from endo. And I think at the end of the day, if you look at the way this case has been set up, their argument is they're entitled to a clear and unmistakable prosecution history disclaimer. They have the burden to prove that. They simply haven't met that burden. Suppose we were to hold that the standard is not clear and unmistakable disclaimer, but just claim interpretation. Does it come out differently? I don't believe so, Your Honor. I believe even if you look at the prosecution history, the prosecution history simply does not add to what's already in the specification. It does not give any guidance as to what the term fanning means, other than distinguishing it from endo, which, again, is gradual cooling. It's low cooling. And here, if you look at the prosecution history, this case would be different, Judge Dyke, if they had come in and said fanning the wafer means fanning the front surface of the wafer. It would have been different if they said fanning the wafer does not include rear side cooling. It would have been different. Suppose they said that endo doesn't disclose fanning. Yes, Your Honor. If they had said that just by itself, I think, again, this case would be different. But as Your Honor pointed out, they said more than that. They pointed to that thermal stress limitation that, Judge Dyke, you asked about at least ten times during the prosecution, at least ten times. I counted it. So what they did during prosecution was they repeated the claim language, which this Court has said time and again is not enough for disclaimer. And then the other statements that they pointed to simply distinguished endo. And as the Board correctly pointed out, the prosecution history is amenable to multiple interpretations. And we think that is fatal to their prosecution history disclaimer argument. And at the end of the day, what is the purpose of the prosecution history, just by going back to the points you were making? The prosecution history is supposed to give notice to a competitor. This prosecution history did not give any sort of notice with respect to fanning the wafer and that they meant that it had to be topside cooling. And there's more here with respect to the specification. If we look at the specification, nowhere does the specification tell us that fanning the wafer means topside cooling. And in fact, what could they have done in this case, in the IPR? They actually tried to amend their claims to include topside cooling, essentially topside cooling. And that's at 843. The Board denied that amendment. The Board found there was no written description support for that amendment. So they cannot now be allowed to come to this Court when they try to amend the claims during the IPR below if finding that they don't appeal, the Board found that there was no support for that amendment. During prosecution, they never said fanning the wafer means fanning the topside of the wafer or anything close to it. So when you have facts like this, no matter how you look at the prosecution history, it simply does not support the construction they're asking this Court for. Unless Your Honors have any other questions, I'll give the rest of the time back to the Court. Okay. Thank you. Thank you. Okay. Mr. Coughlin, you've got a few minutes. Briefly, Your Honors, in response to counsel's statement that Yamada was different from Endo, with respect, the record does not establish that. Yamada and Endo are effectively the same. Both of them disclose blowing gas on the rear of the substrate. Endo uses the term flown or applying. Yamada used the term blow, but it's the same type of process where the same process is being performed in each case. And if the prosecution history is to be given any meaning in the interpretation of this claim, Your Honor, it must exclude what's shown in Yamada, which is the same as what's shown in Endo. If the Court has no further questions. Okay. Thank you, Mr. Counsel. Thank you. Thank you. Thank you.